Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516
NELIGAN LLP
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
dbuncher@neliganlaw.com
jgaither@neliganlaw.com

**COUNSEL FOR DEBTOR**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In Re:** | § | **Chapter 11** |
| | § | |
| **ActiTech, L.P.,**[1] | § | **Case No. 22-30049-sgj11** |
| | § | |
| **Debtor** | § | |

## DEBTOR'S AMENDED[2] SUBCHAPTER V PLAN OF REORGANIZATION

Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516
**NELIGAN, LLP**
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
dbuncher@neliganlaw.com
jgaither@neliganlaw.com

COUNSEL TO THE DEBTOR AND
DEBTOR IN POSSESSION

Dated: August 31, 2022

---

[1] The last four digits of the Debtor's federal tax identification number are *4489

[2] The only amendments to the original Plan [Doc. No. 91] are to incorporate the terms of the settlement between the parties to the Agel Lawsuit, which was settled at mediation on August 17, 2022 and is the subject of a separate motion seeking approval of the settlement under Bankruptcy Rule 9019, which will be heard at the same time as the confirmation hearing for this Plan.

ActiTech, L.P. (the "Debtor") proposes the following Subchapter V Plan of Reorganization (the "Plan") pursuant to 11 U.S.C. § 1189, et seq.

# I.     PLAN AND CONFIRMATION REQUIREMENTS

To confirm a plan under Bankruptcy Code section 1191, whether the plan is consensual or not, certain requirements must be satisfied under Bankruptcy Code section 1129(a), including, without limitation, the "best interest of creditors" test set forth under Bankruptcy Code section 1129(a)(7). *See* 11 U.S.C. § 1191. Thus, this Plan must provide Holders of Allowed Claims with more than they would receive if the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. Additionally, if less than all impaired classes of creditors under the Plan vote in favor of the Plan, the Plan must be "fair and equitable" (as defined by section 1191(c)), and the Bankruptcy Court must find that the Debtor will be, or is reasonably likely to be, able to make the Distributions as contemplated by the Plan. Additionally, the Plan must include: (a) a brief history of the business operations of the Debtor; (b) a liquidation analysis; and (c) projections with respect to the Debtor's ability to make the Distributions provided for under the Plan. *See* 11 U.S.C. § 1190(1).

The Debtor submits that this Plan: (a) provides the necessary content required by Bankruptcy Code section 1190; and, as set forth more fully below, (b) is confirmable under section 1191 because: (i) pursuant to the terms of this Plan, Holders of Allowed Claims will receive more than they would in a hypothetical Chapter 7 liquidation; (ii) is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) is feasible as the Debtor will be able to make the Distributions contemplated under the Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

## A.     Brief History of the Business Operations of the Debtor

### 1.     Overview of the Debtor's Business

The Debtor was formed in 2005 as a Texas limited partnership. The Debtor manufactures and sells personal care and nutraceutical products, including skin care and beauty products. As of the Petition Date, the Debtor had 5 employees. The Debtor's operations are managed by its CEO Elysiann Bishop. Historically, the Debtor's customers and products included well-known companies and products like TIGI (Tony & Guy), Unilever, TRESemme, Macadamia Beauty, Bed Head, Biosafe, Actifirm, Schooltime Products, Deynique and Colleen Rothschild, with historical sales averaging approximately $14 million to $15 million per year.

In 1999, Ms. Bishop and her now-former husband formed ActiPrime, Inc. ("ActiPrime"), an affiliate of the Debtor. ActiPrime is a research and development company which has employed chemists who have created hundreds of formulas for cosmetic and nutraceutical products. ActiPrime has developed products for numerous cosmetic and nutraceutical companies.

ActiPrime sold its branded products on a retail basis under the name "Actifirm." In 2010, ActiPrime's retail business was separately incorporated as Actifirm Corporation ("Actifirm"). Actifirm owns numerous brands of cosmetic and nutraceutical products and has sold its products on a retail basis to companies such as QVC television network, as well as to doctors' offices and spas such as Bliss Spas and Exhale Spas. Actifirm has marketed its products largely through trade shows and through a team of salespeople. ActiPrime and Actifirm were located in Carrollton, Texas. Within a few years, Actifirm generated enough sales to justify opening an affiliated manufacturing facility.

In June of 2005, Ms. Bishop and her former husband formed Actichem, L.P. ("Actichem"), an affiliate of the Debtor, which acquired a 600,000 square foot manufacturing facility located in Sherman, Texas from Johnson & Johnson located at 301 W. FM 1417, Sherman, TX 75090 (the "Sherman Facility").

In December of 2005, Ms. Bishop and her former husband formed the Debtor, which acquired machinery and other property necessary to conduct manufacturing operations at the Sherman Facility. In addition to manufacturing products for Actifirm, the Debtor acted as a contract manufacturer, manufacturing products for cosmetic and nutraceutical companies across the United States. During or about 2008, the Debtor received an organic certification which allowed it to produce fully organic cosmetic products, resulting in a large increase in business.

## 2. Divorce and Criminal Conviction of Michael Bishop

The Debtor was originally managed by Ms. Bishop and her ex-husband, Michael Bishop. However, in 2017, she filed for divorce after discovering criminal activity by Mr. Bishop unrelated to the Debtor's business. Michael Bishop pled guilty to this criminal activity and was sentenced to eight years in prison. According to the Texas Department of Criminal Justice webpage, Michael Bishop is incarcerated at the Willacy Unit and has a projected release date of December 14, 2026.

After a mediation, Ms. Bishop and her ex-husband entered into a Mediated Settlement Agreement dated December 10, 2018. Days later, Michael Bishop began serving his prison sentence. The terms of the Mediated Settlement Agreement were incorporated into an Agreed Final Decree of Divorce and Termination signed by the Court on January 30, 2019 (the "Agreed Decree"). Pursuant to the Agreed Decree, Ms. Bishop was awarded and now owns 100% of the equity in the above-mentioned companies, including the Debtor. As a result, Ms. Bishop has been in sole control of the Debtor and its affiliates since that time.

## 3. Sale of the Sherman Facility and the Purchaser's Refusal to Turn over the Debtor's Inventory and Equipment

Until July 2021, the Debtor conducted its manufacturing operations at the Sherman Facility and was continuing to manufacture and sell its products. In July 2021, however, Actichem sold the Sherman Facility to MC-GP, LLC (the "Purchaser") for $19,000,000. A portion of the proceeds of the sale of the Sherman Facility was used to pay costs associated with the sale as well as outstanding secured and unsecured debts. Actichem is currently holding approximately $12,000,000 in remaining sales proceeds.

After the closing of the sale of the Sherman Facility, the Purchaser refused to turn over certain manufacturing equipment and inventory belonging to the Debtor or give access to the Sherman Facility to the Debtor to allow the Debtor to inspect and retrieve the equipment and inventory. After the sale of the Sherman Facility, the Debtor's management personnel and employees have continued the Debtor's operations on a limited basis, including research and development by Ms. Bishop and a chemist related to potential new products the Debtor intends to manufacture, market and sell upon emergence from bankruptcy. However, as a result of the Purchaser's refusal to turn over the Debtor's manufacturing equipment and inventory, the Debtor has been unable to resume its manufacturing and sales operations. The Debtor has since discovered that the Purchaser was actually a straw purchaser for one of ActiTech's competitors, LaCore Nutraceuticals, which is now using the Sherman Facility to compete against ActiTech.

### 4. Debtor Files Bankruptcy

The Debtor filed this bankruptcy on January 10, 2022 in order to obtain a breathing spell from litigation filed by several creditors, so that the Debtor could seek turnover of its manufacturing equipment from the Purchaser and LaCore in order to resume manufacturing operations and sales of its products.

### 5. Turnover Adversary Proceeding

On January 11, 2022, the Debtor filed a Complaint for Turnover and Other Relief against the purchaser of the Sherman Facility and LaCore Nutraceuticals, the tenant occupying the Sherman Facility, seeking turnover of the Debtor's equipment and inventory, Adversary No. 22-03001 (the "Turnover Adversary"). The Court originally set the Turnover Adversary for trial on May 10 and 11, 2022. However, due to delays in connection with a third party inspection and inventory of the equipment, the trial of the Turnover Adversary was delayed until July 18 and 19, 2022.

### 6. Agel/JRJR33 Trsutee Litigation

In November 2017, one of the Debtor's disputed, contingent and unliquidated creditors, Agel Enterprises, Inc. ("Agel") filed a lawsuit against the Debtor and certain of its affiliates, in the 116th District Court of Dallas, Texas (the "Agel Lawsuit"), asserting a usury claim against the Debtor, and an alter ego/joint enterprise claim against the Debtor's affiliate Actichem, seeking to hold Actichem liable for the Debtor's alleged usury (the "Agel Claim"). The Agel Claim arises from the sale of goods by ActiTech on credit to Agel at a time that Michael Bishop was in charge of the Debtor, while he was at the same time a shareholder and board member of JRJR33, Inc. ("JRJR33"), the parent corporation of Agel. Thus, Michael Bishop was acting as a dual fiduciary and agent of both the Debtor and Agel at the time of the alleged usurious transaction.

JRJR33 is in a Chapter 7 bankruptcy in the same Bankruptcy Court as this Subchapter V Case, Bankruptcy Case No. 18-32123-sgj7. Rob Yaquinto is the court-appointed Chapter 7 trustee (the "Trustee") in the JRJR33 bankruptcy case. Pursuant to an order entered in the JRJR33 bankruptcy case, the Trustee of JRJR33 has been authorized to control and direct the Agel Lawsuit. The Trustee is a party in the Agel Lawsuit, but all of the Trustee's claims were non-suited. Therefore, the only remaining claims in the Agel Lawsuit are the usury claim and the alter ego/joint enterprise claims of Agel against the Debtor and Actichem, respectively.

In the JRJR33 bankruptcy case, the Trustee sued Michael Bishop in an adversary proceeding contending that he breached his fiduciary duty to JRJR33 by entering into this allegedly usurious transaction and obtained a $3.2 million dollar settlement from the JRJR33 directors and officers insurance carrier.

The Debtor disputes that the transaction with Agel was usurious. The Debtor further contends that through the Agel Lawsuit, the Trustee and Agel seek to take advantage of an alleged technical violation of the usury statute by the Debtor, by suing the Debtor for a transaction arising from the conduct of a fiduciary and insider of both the Debtor and Agel, Michael Bishop, who the Trustee sued for breaching his fiduciary duty, even though Agel suffered no actual harm as a result of the alleged usurious transaction. Agel did not pay any of the alleged usurious interest. Despite these facts, Agel seeks damages from the Debtor of $11,869,041.64, which for the most part consist of statutory treble damages under the Texas usury statute.

Agel also seeks to take further advantage of this insider transaction by seeking to recover from the Debtor's affiliate, Actichem, on theories of alter ego and/or joint enterprise. The Debtor disputes that ActiChem is an alter ego or part of a joint enterprise with the Debtor. ActiChem was a real estate holding company that owned the Sherman Facility.

The Debtor removed the Agel Lawsuit from state court to the Bankruptcy Court on January 17, 2022, and the removed action is pending as Adversary No. 22-03002 (the "Agel Adversary"). It is the Debtor's contention that only the Debtor can assert an alter ego and/or joint enterprise claim against Actichem, pursuant to long standing Fifth Circuit precedent. *See In re Schimmelpennick*, 183 F.3d 347 (5th Cir. 1999) and *In re Seven Seas Petroleum, Inc.* 522 F.3d 575 (5th Cir. 2008).

A mediation was held on August 17, 2022 with former United States Bankruptcy Judge Leif Clark, at which the parties reached a settlement of the Agel/JRJR33 Trustee Claims, including the claims asserted in the Agel Lawsuit. The terms of the settlement will be incorporated into a formal settlement agreement, which will be filed in the Bankruptcy Court along with a motion seeking approval of the settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Debtor intends to request that the Rule 9019 Motion be set for hearing at the same time as the Confirmation Hearing for this Amended Plan. The general terms of the settlement are: (1) the Debtor shall pay $2.75 million to JRJR33, using money provided to the Debtor by its affiliate ActiChem to fund such settlement payment, (2) the Debtor shall assign to JRJR33 any and all causes of action it might have against its insurers, whether for bad faith, breach of contract or other violations of law; (3) the parties in the Agel Lawsuit shall execute full and final mutual releases of any and all claims against the parties or any of their agents, representatives or affiliates; and (4) Agel and JGB Collateral shall withdraw the Proofs of Claim they filed in the Debtor's bankruptcy case. In consideration for Actichem funding the settlement payment to JRJR33, the Debtor shall assign to Actichem any and all claims against Michael Bishop for breach of fiduciary duty.

### 7.    The Debtor's Reorganization Plan

The Debtor intends to restart manufacturing and sales of certain skincare and other products using a third-party manufacturer. The Debtor intends to begin manufacturing one

established product and two new products that the Debtor has confidence will produce the sales and revenue to fund the payments to creditors under this Plan. The Debtor reserves the right to begin its own manufacturing if it prevails in the Turnover Adversary, if it makes economic sense to do so in the business judgment of the Debtor's management.

Elysiann Bishop will continue to serve as the Reorganized Debtor's President and Chief Executive Officer and manage the Reorganized Debtor's affairs after confirmation of this Plan.

Based upon the Debtor's historical sales and Ms. Bishop's extensive experience in the industry and the customer relationships she has developed over many years, the Debtor has prepared the three-year projections attached hereto as **Exhibit A** (the "Projections"), which the Debtor believes are reasonable and achievable. These Projections reflect the Reorganized Debtor's Projected Disposable Income during the three-year period of the Plan. "Disposable Income" means the income that is received by the Reorganized Debtor that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation or operation of the Reorganized Debtor's business. *See* 11. U.S.C. § 1191(d).

On the Effective Date of the Plan, the Reorganized Debtor will borrow the funds needed to restart and fund operations and pay the unpaid administrative expenses of the bankruptcy from its affiliate Actichem, which is also owned by Ms. Bishop. See Definition of Exit Financing in Article II below.

A copy of the terms of the contract between the Reorganized Debtor and the third-party manufacturer the Debtor will use to manufacture its products will be filed at a later date either as an Exhibit to an Amendment to this Plan or as part of a Plan Supplement.

## B. The Plan Meets the "Best Interest of Creditors" Test and Is "Fair and Equitable"

In accordance with Bankruptcy Code section 1191(c), this Plan provides that all Distributions will be funded with the Debtor's Projected Disposable Income over the three-year Commitment Period. *See* Projections attached hereto as **Exhibit A** and Article IV.A(3) below. Additionally, the Debtors Liquidation Analysis, attached hereto as **Exhibit B,** demonstrates that this Plan is in the best interests of Creditors, because Creditors will receive more than they would receive if the Debtor's assets were liquidated. Any Litigation Recoveries received during the Commitment Period that exceed the Projected Disposable Income will also be Distributed to Holder of Allowed General Unsecured Claims.

Accordingly, this Plan satisfies the "best interest of creditors" test and is "fair and equitable" because it proposes to provide total Distributions to Holders of Allowed Claims that exceed the Liquidation Value and are not less than the Debtor's Projected Disposable Income for the Commitment Period.

The Plan also satisfies the requirements of 11 U.S.C. § 1191(b), because it is fair and equitable, and does not discriminate unfairly, with respect to each Class of Claims that are impaired under the Plan.

**C.** **The Debtor Will Be Able to Make All Distributions Contemplated Under the Plan**

In accordance with Bankruptcy Code sections 1191(c)(3)(A)(i) and (ii), this Plan and the Projections demonstrate that the Reorganized Debtor will have sufficient future earnings to provide regular, annual Pro Rata Distributions of Projected Disposable Income to Holders of Allowed General Unsecured Claims over the Commitment Period. The Exit Financing will provide the Reorganized Debtor the funds needed to pay all remaining unpaid Administrative Claims in this Subchapter V Case, as well as all start-up costs needed to fund the Reorganized Debtor's operations until the Reorganized Debtor becomes cash flow positive. The Exit Financing will also be used to fund any shortfalls in Projected Disposable Income should the Debtor's actual disposable income be less than the Projected Disposable Income.

## II. DEFINITIONS AND CONSTRUCTION OF TERMS

**A.** **Definitions**

*"Actichem"* means the Debtor's affiliate, Actichem, L.P.

*"Actichem Loan Documents"* means the loan documents between Actichem and the Debtor governing the Exit Financing.

*"ActiTech"* means the Debtor, ActiTech, L.P.

*"Administrative Claim"* means any Claim against any Debtor for costs and expenses of administration of the Subchapter V Case pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtor businesses; (b) Allowed Professional Fee Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Subchapter V Case pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5); and (d) all fees and charges assessed in the Prior Case pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

*"Administrative Claims Bar Date"* means the deadline for Filing requests for payment of Administrative Claims, with the exception of Professional Fee Claims, which shall be the first Business Day that is 30 days after the Effective Date.

*"Affiliate"* means an "affiliate," as defined in Bankruptcy Code section 101(2), including but not limited to Actichem, Active Group Management, LLC, Active Organics, L.P., ActiPrime, Inc. and Actifirm.

*"Agel"* means Agel Enterprises, Inc., the Plaintiff in the Agel Lawsuit described in section I(A)(6) above.

*"Agel/JRJR33 Trustee Claims"* means any and all Claims and Causes of Action of Agel or the Trustee of JRJR33, Inc. against the Debtor or any of its affiliates, including Actichem, including but not limited to the Claims of Agel asserted or which could have been asserted in the

Agel Lawsuit described in section I(A)(6) above, as well as Proof of Claim No. 16 filed by Agel in this Subchapter V Case.

"*Agel/JRJR33 Judgment*" means the judgment in favor of the Debtor against Agel in the amount of $1,767,359.93 entered on September 10, 2021 in Cause No. DC-17-15206 in the 116th Judicial District of Dallas County, Texas.

"*Agel Lawsuit*" means the lawsuit and Adversary Proceeding described in section I(A)(6) above.

"*Allowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim Filed by the applicable Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or a Claim or Interest for which a Proof of Claim or request for payment of Administrative Claim expressly is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order), to which no objection has been filed; (b) a Claim or Interest that is listed in the Schedules as not Contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest that is Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided, however, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by the Plan (including the Claims Objection Deadline), the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order. Unless otherwise specified in the Plan or in an order of the Bankruptcy Court allowing such Claim or Interest, "Allowed" in reference to a Claim or Interest shall not include: (1) any interest on the amount of such Claim accruing from and after the Petition Date; (2) any punitive or exemplary damages pr statutory treble damages; (3) any fine, penalty or forfeiture; or (4) any attorneys' fees and expenses. Any Claim or Interest that has been or is hereafter listed in the Schedules as Contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to Bankruptcy Code section 502(d) shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest. If a Creditor files a Proof of Claim in an amount lower than such Creditor's Claim is Scheduled on the Debtor's Schedules, and provided the Debtor has not filed an objection to the Proof of Claim or Scheduled the Claim as Disputed, Unliquidated or Contingent, then such Claim shall be Allowed only at the lower amount contained in the Proof of Claim.

"*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to the Plan, Filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtor from time to time prior to the Effective Date.

"*Avoidance Actions*" means causes of action arising under Bankruptcy Code sections 522, 541, 542, 544, 543, 544, 545, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, having jurisdiction over the Subchapter V Case or, if the Bankruptcy Court ceases to exercise jurisdiction over the Subchapter V Case, such court or adjunct thereof that exercises jurisdiction over the Subchapter V Case in lieu of the United States Bankruptcy Court for the Northern District of Texas.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"*Bar Date(s)*" means the Claims Bar Date, the Governmental Bar Date, or the Rejection Damages Bar Date, as applicable; and "Bar Dates" means a collective reference to the Claims Bar Date, the Governmental Bar Date, and the Rejection Damages Bar Date.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case now owned or hereafter acquired whether known or unknown, Contingent or non-Contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Subchapter V Case, including through the Effective Date.

"*Claim*" means a "claim," as that term is defined in Bankruptcy Code section 101(5), against any Debtor.

"*Claims Bar Date*" means the date for filing Proofs of Claim, March 21, 2022.

"*Claims Objection Deadline*" means the deadline for objecting to a Claim or Interest asserted against or in a Debtor, which shall be on the date that is the later of (a) 60 days after the Effective Date, and (b) such other date as may be specifically fixed by order of the Bankruptcy Court.

"*Claims Register*" means the official register of Claims.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to Bankruptcy Code section 1122(a).

"*Collateral*" means any property or interest in property of the bankruptcy estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

"*Commitment Period*" means the 3-year period contemplated and set forth under Bankruptcy Code section 1191(c) and further described in Article IV(A)(3) below.

"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Subchapter V Case within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under Bankruptcy Code section 1128 at which the Debtor seeks entry of the Confirmation Order, as such hearing(s) may be adjourned or continued from time to time.

"*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129, as modified by section 1191.

"*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Subchapter V Case within the meaning of Bankruptcy Rules 5003 and 9021.

"*Consummation*" means the occurrence of the Effective Date.

"*Contingent*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, any contingent or unliquidated Claim asserted or which may be asserted against the Debtor.

"*Creditor*" shall mean the Holder of a Claim against the Debtor.

"*Cure Notice*" means a notice sent to the non-Debtor counterparties to an Executory Contract or Unexpired Lease in connection with the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease under the Plan pursuant to section 365 of the Bankruptcy Code, which shall include the proposed amount to be paid on account of Cure Claims, and which shall be (a) filed with the Plan Supplement and (b) served on all counterparties to an Executory Contract or Unexpired Lease to be assumed under the Plan. The Assumed Executory Contracts and Unexpired Lease Schedule shall constitute a "Cure Notice."

"*Cure*" or "*Cure Claim*" means any Claim (unless waived or modified by the applicable counterparty) against the Debtor based upon the Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under Bankruptcy Code section 365, other than a default that is not required to be cured pursuant to Bankruptcy Code section 365(b)(2).

"*Debtor*" means ActiTech.

"*Debtor Release*" has the meaning ascribed to such term in Article VIII.D.

"*Disallowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, a Claim or Interest, or any portion thereof that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as Contingent, Disputed or unliquidated and (ii) as to which the Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disposable Income*" means the Reorganized Debtor's "disposable income" as defined under Bankruptcy Code section 1191(d).

"*Disputed*" means, with respect to any Claim or Interest, or any portion thereof, a Claim or Interest, or any portion thereof, that is not yet Allowed, including (a) any Claim evidenced by a Proof of Claim that, on its face, is contingent or unliquidated; (b) any Claim that is subject to an objection Filed by the Claims Objection Deadline or a request for estimation, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court; (c) any Claim or Interest scheduled by the Debtor as Contingent, unliquidated or disputed, (d) any Claim or Interest evidenced by a Proof of Claim which amends a Claim or Interest scheduled by the Debtor as Contingent, unliquidated or disputed, and (e) any Claim or Interest that is not an Allowed Claim or Allowed Interest or a Disallowed Claim or a Disallowed Interest.

"*Distribution*" means Cash, property, interests in property, or other value distributed by the Reorganized Debtor to Holders of Allowed Claims, or their designated agents, under the Plan.

"*Effective Date*" means the date which is the first Business Day on which the conditions set forth in Article IX.A have been satisfied or waived.

"*Entity*" shall have the meaning set forth in Bankruptcy Code section 101(15).

"*Equity Interest*" or "*Interest*" means any "equity security" in the Debtor, as defined in Bankruptcy Code section 101(16), including, without limitation, all issued, unissued, authorized or outstanding ownership interests (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

"*Estate*" means the estate of the Debtor created under Bankruptcy Code sections 301 and 541 upon commencement of the Debtor's Subchapter V Case.

"*Exculpated Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Case: (a) the Debtor; (b) the Reorganized Debtor; (c) the Estate; (d) the Debtor's Professionals and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns,

subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; provided, however, that Released Parties shall not include Michael Bishop, a former member of Debtor's management and indirect owner.

"*Executory Contract*" means all contracts and leases to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Exit Financing*" means the loan to be made by ActiChem to the Reorganized Debtor on the Effective Date in an amount sufficient to pay all unpaid administrative expenses and professional fees of the bankruptcy case and to fund the start-up costs and operating cash shortfalls of the Reorganized Debtor's business. The Exit Financing will also be used to fund any shortfalls in Projected Disposable Income should the Debtor's actual disposable income be less than the Projected Disposable Income. The Exit Financing will consist of a $500,000 term loan, which will be used to pay Allowed Secured Claims that the Debtor elects to pay in full and Allowed Administrative Claims on the Effective Date, as well as a $1,500,000 line of credit to fund startup costs, operating cash shortfalls until the Reorganized Debtor becomes cash flow positive, and any shortfalls in Projected Disposable Income. The Actichem Loan Documents governing the Exit Financing between Actichem and the Reorganized Debtor will be filed as part of a Plan Supplement.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Subchapter V Case.

"*Final Decree*" means the order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Subchapter V Case.

"*Final Order*" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the docket in the Subchapter V Case (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired.

"*First Day Declaration*" means the *Declaration of Elysiann Bishop in Support of Chapter 11 Petition and Certain First Day Pleadings* [Docket No. 6].

"*General Unsecured Claim*" means any Unsecured Claim.

"*Governmental Bar Date*" means the date for Governmental Units to file Proofs of Claim, July 11, 2022.

"*Governmental Unit*" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"*Holder*" means the beneficial holder of any Claim or Interest.

"*Impaired*" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

"*JRJR33*" means JRJR33, Inc.

"*LaCore Claims*" means any and all Claims and Causes of Action of LaCore against the Debtor, including but not limited to the counterclaims asserted in the Turnover Adversary and Proof of Claim No. 18."

"*Lien*" means "lien," as defined in Bankruptcy Code section 101(37).

"*Litigation Recoveries*" means net proceeds of Causes of Action by the Debtor or Reorganized Debtor, after payment of attorneys' fees, expert witness fees, court costs and all other litigation expenses associated with bringing such Causes of Action, if and when received by the Reorganized Debtor during the three-year Commitment Period, but only to the extent that such Litigation Recoveries exceed the Projected Disposable Income to be paid to Creditors under this Plan.

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, or any other court having jurisdiction over the Subchapter V Case.

"*Petition Date*" means January 10, 2022, the date on which the Debtor commenced the Subchapter V Case.

"*Plan*" means this *Subchapter V Plan Reorganization*, including all exhibits, supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Documents*" means the Plan, the Plan Supplement, and all the exhibits and schedules attached to each of the foregoing.

"*Plan Proponent*" means the Debtor.

"*Plan Supplement*" means the supplemental documents, schedules, and exhibits to the Plan to be Filed by the Debtor containing substantially final forms of, among other things, the Assumed Executory Contracts and Unexpired Lease Schedule, the Cure Notice, the Actichem Loan Documents, the terms of the contract with the contract manufacturer, a schedule containing a non-exhaustive list of the potential Causes of Action of the Debtor to be preserved for the Reorganized Debtor, and a schedule list of the persons who will serve as officers and directors of the Reorganized Debtor. The Debtor shall have the right to amend all of the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

"*Priority Unsecured Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, which is entitled to priority under Bankruptcy Code section 507(a).

"*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

"*Professional Fee Claim*" means any Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

"*Professional Fee Claims Bar Date*" means the first Business Day that is 30 days after the Effective Date.

"*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered before or on the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331, including but not limited to Neligan, LLP, Freidman & Feiger, LLP, and Capstone Partners.

"*Projected Disposable Income*" means the Disposable Income projected in the Projections attached hereto as Exhibit A.

"*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Subchapter V Case.

"*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124.

"*Rejection Claims*" means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365(a) by the Debtor, as limited, in the case of a rejected Unexpired Lease, by Bankruptcy Code section 502(b)(6).

"*Rejection Damages Bar Date*" means the date by which Rejection Claims must be Filed, 30 days after the later of (i) the Confirmation Date, or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease.

"*Related Parties*" means, with respect to any Person, such Person's current and former Affiliates, partners, subsidiaries, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other

Professionals, together with their respective successors and assigns, in each case in their capacity as such.

"*Released Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Case: (a) the Debtor; (b) the Reorganized Debtor; (c) the Estate; (d) the Debtor's Professionals; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; provided, however, that Released Parties shall not include Michael Bishop, a former member of Debtor's management and indirect owner.

"*Releasing Party*" means each of the following in their capacity as such: (a) all Holders of Claims who vote to accept the Plan; (b) Holders of Claims or Equity Interests who are deemed to either accept or reject the Plan and are not entitled to vote; (c) all Holders of Claims that receive, but do not return a ballot; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, and officers, to the extent such director, manager, or officer provides express consent, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

"*Reorganized Debtor*" means the Debtor and any successor thereto after the Effective Date.

"*Restructuring Documents*" means all agreements, instruments, pleadings, orders, forms, questionnaires and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to, the Plan and/or the restructuring, including, but not limited to: (a) the Actichem Loan Documents, (b) the Plan, (c) the Plan Supplement, (d) the Solicitation Procedures Order, (e) the Confirmation Order, (f) all First Day Motions, and (g) the ballots, the motion to approve the form of the ballots and the solicitation thereof, and the order of the Bankruptcy Court approving the form of the ballots and the solicitation.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs Filed by the Debtor under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such Schedules may be amended, modified, or supplemented from time to time.

"*Secured Claim*" means any Claim against any Debtor: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the creditor's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or (b) Allowed as such pursuant to the Plan.

"*Solicitation Procedures Order*" means the order(s) of the Bankruptcy Curt approving procedures for the solicitation of acceptances of the Plan.

"*Subchapter V Case*" means the above-referenced case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court, under Case No. 22-30049-11.

"*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is "unimpaired" within the meaning of Bankruptcy Code section 1124.

"*Unsecured Claim*" means any Claim other than Administrative Claims, Secured Claims, and Priority Unsecured Claims.

## B.    Interpretation, Application of Definitions, and Rules of Construction

The following rules of construction, interpretation, and application shall apply:

1.    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

2.    Unless otherwise specified, each section, article, schedule, or exhibit reference in the Plan is to the respective section in, article of, schedule to, or exhibit to the Plan.

3.    The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

4.    The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan.

5.    A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

6.    The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

7.    Unless otherwise provided, any reference in the Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

8.    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## III.    <u>UNCLASSIFIED CLAIMS</u>

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes and Interests set forth in Article IV of the Plan.

**A.    Administrative Claims Bar Date**

Requests for payment of Administrative Claims (other than Professional Fee Claims) must be filed no later than the Administrative Claims Bar Date.

**B.    Treatment of Administrative Claims**

Except to the extent that any Entity entitled to payment of an Allowed Administrative Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the Effective Date, or as soon as reasonably practicable thereafter, or within ten (10) Business Days after the entry of a Final Order Allowing such Administrative Expense Claim, whichever is later, or as soon thereafter as is practicable. Such payments to Holders of Allowed Administrative Expense Claims shall be paid by the Debtor or Reorganized Debtor, as applicable.

**Holders of Administrative Claims (other than Professional Fee Claims) that do not file requests for the allowance and payment thereof on or before the Administrative Claims Bar Date shall forever be barred, estopped and enjoined from asserting such Administrative Claims against the Debtor, its Estate, the Reorganized Debtor or their respective property and assets, and such Administrative Claims shall be deemed discharged as of the Effective Date.**

**C.    Bar Date and Treatment of Professional Fee Claims**

All requests for payment of Professional Fee Claims must be Filed no later than the Professional Fee Claims Bar Date. Allowed Professional Fee Claim shall be paid in full in cash within ten (10) business days after such Professional Fee Claims are Allowed, or at such other time as mutually agreed upon by the Professional and the Debtor or Reorganized Debtor, as applicable.

**D.      Priority Tax Claims**

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment with the Debtor or the Reorganized Debtor, as applicable, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Priority Tax Claim an amount of Cash equal to the full unpaid amount of such Allowed Tax Claim on (1) the Effective Date, (2) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable, or (3) over a period ending not later than three (3) years after the applicable Petition Date.  Each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, *provided*, *however*, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) shall be disallowed pursuant to this Plan and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor or the Estate.

**E.      Post-Effective Date Fees and Expenses**

Except as otherwise specifically provided in the Plan or Confirmation Order, on and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan incurred by the Reorganized Debtor, subject to the terms of the Plan and Confirmation Order. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Reorganized Debtor may employ any Professional in the ordinary course of business, including those Professionals employed during the Subchapter V Case, without any further notice to or action, order, or approval of the Bankruptcy Court.

**IV.      <u>CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS</u>**

Pursuant to Bankruptcy Code sections 1122, 1123, and 1190, Claims and Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to the Plan, as set forth herein. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The Plan contemplates the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Estimated Recovery |
|---|---|---|---|---|
| 1 | Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Priority Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote | 34% |
| 4 | LaCore Claims | Impaired | Entitled to Vote | 0%[3] |
| 5 | Agel/JRJR33 Trustee Claims | Impaired | Entitled to Vote | 17%[4] |
| 6 | Intercompany Claims | Impaired | Deemed to Reject | 0% |
| 7 | Equity Interests | Unimpaired | Deemed to Accept | 100% |

## A.      Classification and Treatment of Claims and Interests

Except to the extent that the Debtor or the Reorganized Debtor, as applicable, and a Holder of an Allowed Claim or Allowed Interest, as applicable, agree in writing to less favorable treatment for such Allowed Claim or Allowed Interest, as applicable, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon thereafter as reasonably practicable.

### (1)      Class 1 – Secured Claims

*Classification*. Class 1 consists of all Secured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Secured Claim and the Debtor or the Reorganized Debtor, as applicable, agree in writing to less favorable treatment of its Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Secured Claim: (i) payment in full, in Cash, of the unpaid portion of its Allowed Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes Allowed; (ii) delivery of the Collateral securing such Allowed Secured Claim; (iii) Reinstatement of the Secured Claim; or (iv) such other treatment as the Debtor or Reorganized Debtor, as applicable and the Holder of such Allowed Secured Claim may agree.

---

[3] The Debtor has estimated the recovery on the LaCore Claims at 0% because the Debtor believes LaCore's Claim for storage charges is without merit. However, if the Court determines LaCore has an Allowed Claim, LaCore would recover its pro rata share of the Distributions to the General Unsecured Claims, because the treatment for an Allowed LaCore Claim is the same as the treatment for an Allowed General Unsecured Claim.

[4] The approximate 17% return on the Agel/JRJR33 Trustee Claims was calculated by dividing the $2,750,000 settlement payment by the amount of Agel's Proof of Claim ($16,279,744). Agel may recover more from the assignment of bad faith claims pursuant to the settlement.

*Voting*. Class 1 is Unimpaired. Holders of Allowed Secured Claims in Class 1 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Secured Claims are not entitled to vote to accept or reject the Plan.

**(2)    Class 2 – Priority Unsecured Claims**

*Classification*. Class 2 consists of all Priority Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Priority Unsecured Claim and the Debtor or the Reorganized Debtor, as applicable, agree in writing to less favorable treatment of its Allowed Priority Unsecured Claim, each Holder of an Allowed Priority Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Priority Unsecured Claim: (i) payment in full, in Cash, on the later of the Effective Date and the date on which such Priority Unsecured Claim becomes Allowed; (ii) payment in the ordinary course of business between the Debtor or the Reorganized Debtor, as applicable, and the Holder of such Allowed Priority Unsecured Claim; or (iii) such other treatment as the Debtor or Reorganized Debtor, as applicable and the Holder of such Allowed Priority Unsecured may agree.

*Voting*. Class 2 is Unimpaired. Holders of Allowed Priority Unsecured Claims in Class 2 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Priority Unsecured Claims are not entitled to vote to accept or reject the Plan.

**(3)    Class 3 – General Unsecured Claims**

*Classification*. Class 3 consists of all General Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtor or the Reorganized Debtor, as applicable, agree to less favorable treatment of such Holder's Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed General Unsecured Claim: (1) such Holder's Pro Rata share of the Reorganized Debtor's Projected Disposable Income (as set forth on Exhibit A to this Plan) during the Commitment Period, payable as follows:

- Year 1 –  From Effective Date to December 31, 2023: $0;

- Year 2 – From January 1, 2024 to December 31, 2024: $132,718.00, which payment shall be made no later than January 15, 2025;

- Year 3 – From January 1, 2025 to December 31, 2025: $327,154.00, which payment shall be made no later than January 15, 2026; and

 (2) to the extent Litigation Recoveries exceed the Projected Disposable Income to be Distributed under this Plan, such Holder's Pro Rata Share of such Litigation Recoveries, payable on the next annual payment date set forth above after the Debtor receives such Litigation Recoveries.  However, the maximum Distribution to a Holder of a Class 3 Claim shall be the total Allowed amount of such Holder's Claim.

For the avoidance of doubt, in no event shall any Litigation Recoveries less than the amount of Projected Disposable Income be distributed to Creditors.

*Voting*. Class 3 is Impaired. Holders of Allowed General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Plan.

**(4)     Class 4 – LaCore Claims**

*Classification*. Class 4 consists of the LaCore Claims, which are disputed, contingent and unliquidated.

*Treatment*. Except to the extent that a Holder of an Allowed Class 4 Claim and the Debtor or the Reorganized Debtor, as applicable, agree to less favorable treatment of such Holder's Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Class 4 Claim, the same treatment as the Allowed General Unsecured Claims in Class 3. However, the maximum Distribution to a Holder of a Class 4 Claim shall be the total Allowed amount of such Holder's Claim.

*Voting*. Class 4 is Impaired. Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

**(5)     Class 5 – Agel/JRJR33 Trustee Claims**

*Classification*. Class 5 consists of the Agel/JRJR33 Trustee Claims, which are disputed, contingent and unliquidated.

*Treatment*. The Agel/JRJR33 Trustee Claims will be treated in accordance with the terms of a Settlement Agreement to be filed by the Debtor with the Bankruptcy Court along with a Motion seeking approval of the settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Debtor intends to request that the Rule 9019 Motion be set for hearing at the same time as the confirmation hearing for this Amended Plan.  The general terms of the settlement are: (1) the Debtor shall pay $2.75 million to JRJR33, using money provided to the Debtor by its affiliate ActiChem to fund such settlement payment, (2) the Debtor shall assign to JRJR33 any and all causes of action it might have against its insurers, whether for bad faith, breach of contract or other violations of law; and (3) the parties in the Agel Lawsuit shall execute full and final mutual releases of any and all claims against the parties or any of their agents, representatives or affiliates.  In consideration for Actichem funding the settlement payment to JRJR33, the Debtor shall assign to Actichem any and all claims against Michael Bishop for breach of fiduciary duty.

The Agel/JRJR33 Trustee Claims are disallowed and the Holders of the Agel/JRJR33 Trustee Claims shall receive no further Distribution on such Claims, except as provided under the Settlement Agreement.

*Voting*. Class 5 is Impaired. Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

**(6)    Class 6 – Intercompany Claims**

*Classification*. Class 6 consists of all Claims of any affiliate of the Debtor against the Debtor.

*Treatment*. Holders of Intercompany Claims against the Debtor shall not receive any Distribution under the Plan, and such Claims shall be Disallowed and discharged.

*Voting*. Class 6 is Impaired. Holders of Allowed Claims in Class 6 are conclusively presumed to have rejected the Plan under Bankruptcy Code section 1126(g). Therefore, Holders of Claims in Class 6 are not entitled to vote to accept or reject the Plan.

**(7)    Class 7 – Equity Interests in the Debtor**

*Classification*. Class 7 consists of all Interests in the Debtor.

*Treatment*. Holders of Interests in the Debtor shall retain such Interests.

*Voting*. Class 7 is Unimpaired. Holders of Allowed Interests in Class 7 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Therefore, Holders of Interests are not entitled to vote to accept or reject the Plan.

**B.    Special Provision Governing Unimpaired Claims**

Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to affect, diminish, or impair the Debtor's or the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any reinstated Claim or Unimpaired Claim, including legal and equitable defenses to setoffs or recoupment against reinstated Claims or Unimpaired Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired by the Plan. Except as otherwise specifically provided in the Plan, including the releases therein, the Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Subchapter V Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights with respect to any reinstated Claim or Claim that is Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Subchapter Case had not been commenced.

**C.    Special Provision Governing Causes of Action**

Except as otherwise specifically provided in the Plan, (see Article VIII.B) nothing herein shall be deemed to affect, diminish, or impair any third-party non-Debtor's rights and defenses, both legal and equitable, with respect any Claims or Causes of Actions asserted against such

third parties. In addition, nothing in this Plan, the Confirmation Order, or any of the Restructuring Documents tolls, or should be interpreted to toll, any statute of limitations related to any third party Claims or Causes of Action against a non-Debtor.

**D.      Modification of Treatment of Claims and Equity Interests**

The Debtor reserves the right to modify the treatment of any Allowed Claim or Equity Interest in any manner adverse only to the Holder of such Claim or Equity Interest at any time after the Effective Date, in consultation with the Sponsor and only upon the consent of the Holder of the Claim or Equity Interest whose Allowed Claim or Equity Interest, as applicable, is being adversely affected.

**E.      Confirmation Pursuant to Sections 1191(b) of the Bankruptcy Code**

Even if the Plan does not satisfy Bankruptcy Code sections 1129(a)(8) or (10), the Debtor shall seek Confirmation of the Plan pursuant to section 1191(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.

**F.      Elimination of Vacant Classes**

Any Class of Claims or Equity Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to sections 1129(a)(8) and (10) of the Bankruptcy Code.

**G.      Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed to have been accepted by the Holders of such Claims in such Class, and such Holders shall be deemed to be a Releasing Party.

**H.      Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## V.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases**

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases not listed on the Assumed Executory Contracts and Unexpired Lease Schedule will be deemed rejected by the Debtor in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of all Executory

Contract and Unexpired Leases other than those expressly assumed that are listed on the Assumed Executory Contracts and Unexpired Lease Schedule. The Debtor reserves the right to reject any Executory Contract or Unexpired Lease until the Effective Date.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor and be enforceable by the Reorganized Debtor in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of the Subchapter V Case or any successor Case shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtor's assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

Except as otherwise provided herein, all Executory Contracts and Unexpired Leases listed on the Assumed Executory Contracts and Unexpired Lease Schedule will be deemed to have been assumed by the Reorganized Debtor. The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b) approving the assumption as of the Effective Date of the Executory Contracts and Unexpired Leases listed on the Assumed Executory Contracts and Unexpired Lease Schedule. Unless otherwise indicated, all other Executory Contracts and Unexpired Leases are deemed rejected as of the Effective Date of this Plan.

## B.     Cure of Defaults

Any monetary amounts by which each Executory Contract and Unexpired Lease to be assumed is in default shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure payments, (b) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Bankruptcy Code section 365) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the Cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the Executory Contract or Unexpired Lease at issue shall be deemed assumed by the Debtor unless otherwise ordered by the Bankruptcy Court. The Debtor reserves the right to reject any Executory Contract or Unexpired Lease not later than 30 days after the entry of a Final Order resolving any such dispute.

At least 14 days before the Confirmation Hearing, the Debtor will provide for notices of proposed assumption and proposed Cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure amount must be Filed, served, and actually received by the Debtor at least seven days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have consented to such assumption or proposed Cure amount.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtor or Reorganized Debtor, as applicable, may reject such Executory Contracts and Unexpired Leases by giving written notice to the other party to such Executory Contract or Unexpired Lease, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## C.    Rejection Claims

Any counterparty to a contract or lease which is rejected by the Debtor pursuant to the terms of this Plan or otherwise must File and serve a Proof of Claim on the applicable Debtor that is party to the contract or lease to be rejected no later than the Rejection Damages Bar Date.

## D.    D&O Liability Insurance Policies

To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtor shall be deemed to have assumed all unexpired D&O Liability Insurance Policies with respect to the Debtor's directors, managers, officers, and employees serving on or after the Petition Date pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan or Confirmation Order, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, any agreements, documents, and instruments related thereto, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtor under the Plan as to which no Proof of Claim need be filed.

## E. Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

# VI. DISTRIBUTIONS

## A. Reorganized Debtor to Make Distributions

Unless ordered otherwise in the Confirmation Order, the Reorganized Debtor shall make all Distributions required by the Plan. Capstone Partners shall assist the Reorganized Debtor with all Distributions.

## B. Method of Payment

Unless otherwise expressly agreed in writing, payments of Cash under the Plan shall be made by a check drawn on a domestic bank or an electronic wire. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

## C. Objections to and Resolution of Claims

The Reorganized Debtor shall have the right to File objections to Claims after the Effective Date. All objections shall be litigated to entry of a Final Order; *provided, however*, that only the Reorganized Debtor have the authority to compromise, settle, otherwise resolve, or withdraw any objections without approval of the Bankruptcy Court.

## D. Claims Objection Deadline

The Debtor or the Reorganized Debtor, as applicable, shall have the exclusive right to object to all Claims. The Claims Objection Deadline shall be 60 days after the Effective Date; *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion by the Reorganized Debtor.

## E. Estimation of Claims

The Reorganized Debtor may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on such objection. The Bankruptcy Court shall retain jurisdiction to estimate any

Claim at any time during litigation concerning any such Claim, including during the pendency of any appeal relating to such objection. In the event the Bankruptcy Court so estimates any contingent or unliquidated Claim, that estimated amount shall constitute the Allowed amount of the Claim. Unless otherwise ordered by the Bankruptcy Court, unliquidated Claims shall be estimated at $0 for purposes of distributions and the calculation of the Disputed Claims Reserve.

## F.    Disputed Claims

Notwithstanding any other provision of the Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan.

On any date that Distributions are to be made under the terms of the Plan, the Reorganized Debtor shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. The Reorganized Debtor shall also segregate any interest, dividends, or proceeds of such Cash. Such Cash, together with any interest, dividends, or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

Except as otherwise provided herein, within the later of (i) seven (7) Business Days after a Claim becomes an Allowed Claim and (ii) 30 days after the expiration of the Claims Objection Deadline, the Debtor  shall distribute all Cash or other property, including any interest, dividends, or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

## G.    Claims Paid or Payable by Third Parties

### 1.    Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Reorganized Debtor.  To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such Holder shall repay, return, or deliver any Distribution held by or transferred to the Holder to the Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

### 2.    Claims Payable by Insurance Carriers

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the

Claims Register by the Notice and Claims Agent without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 3. Applicability of Insurance Policies

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## H. Investment of Segregated Cash and Property

To the extent practicable, the Reorganized Debtor may invest any Cash or other property segregated in the Disputed Claims Reserve on account of a Disputed Claim, undeliverable Distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment, or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however*, that the Reorganized Debtor shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

## I. Delivery of Distributions

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: at the addresses set forth on the respective Proof of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Debtor or Reorganized Debtor, as applicable, after the date of any related Proof of Claim; or (iii) at the address reflected in the Schedules if no Proof of Claim is Filed and the Debtor or Reorganized Debtor has not received a written notice of a change of address.

## J. Undeliverable or Unclaimed Distributions

If the Distribution to the Holder of any Claim is returned to the Reorganized Debtor as undeliverable, no further distribution shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then current address, at which time such undelivered distribution shall be made to such Holder within 30 days of receipt of such Holder's then current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and revert to the Reorganized Debtor at the expiration of six months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act as a bar to entry of a Final Decree Closing the Subchapter V Case.

## K. Setoff and Recoupment

From and after the Effective Date, the Reorganized Debtor may, to the extent permitted by Bankruptcy Code section 553 or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Causes of Action of any nature whatsoever

that the Reorganized Debtor may have against the Holder of such Claim; *provided, however*, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor any other Cause of Action.

**L.      De Minimis Distributions**

The Reorganized Debtor shall not distribute cash to the Holder of an Allowed Claim in an impaired Class if the amount of Cash to be distributed on account of such Claim is less than $50.00 in the aggregate.  Any Cash not distributed pursuant to this Article VI(J) of the Plan will be the property of the Reorganized Debtor and be otherwise distributed pursuant to the terms of this Plan.

**M.      Allocations**

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, distributions with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

**N.      No Interest**

Unless otherwise explicitly provided for in the Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## VII.      MEANS OF IMPLEMENTATION AND EFFECT OF CONFIRMATION

**A.      General Settlement of Claims**

Unless otherwise set forth in the Plan, pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved by the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, their Estates, and Holders of Claims and Interests and is fair, equitable, and within the range of reasonableness.

**B.      Settlement of Agel/JRJR33 Claims**

The Agel/JRJR33 Trustee Claims will be treated in accordance with the terms of a Settlement Agreement to be filed by the Debtor with the Bankruptcy Court along with a Motion seeking approval of the settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The Debtor intends to request that the Rule 9019 Motion be set for hearing at the same time as the Confirmation Hearing for this Amended Plan.  The general terms of the settlement are: (1) the Debtor shall pay $2.75 million to JRJR33, using money provided to the Debtor by its affiliate

ActiChem to fund such settlement payment, (2) the Debtor shall assign to JRJR33 any and all causes of action it might have against its insurers, whether for bad faith, breach of contract or other violations of law; (3) the parties in the Agel Lawsuit shall execute full and final mutual releases of any and all claims against the parties or any of their agents, representatives or affiliates; and (4) Agel and JGB Collateral shall withdraw the Proofs of Claim they filed in the Debtor's bankruptcy case. In consideration for Actichem funding the settlement payment to JRJR33, the Debtor shall assign to Actichem any and all claims against Michael Bishop for breach of fiduciary duty.

The Agel/JRJR33 Trustee Claims are disallowed and the Holders of the Agel/JRJR33 Trustee Claims shall receive no further Distribution on such Claims, except as provided under the Settlement Agreement.

## C.  Exit Financing

On the Effective Date of the Plan, the Reorganized Debtor will borrow the funds needed to restart and fund operations and pay Allowed Administrative Claims and Allowed Secured Claims from its affiliate Actichem, which is also owned by Ms. Bishop. The Actichem Loan Documents will be filed at a later date as part of a Plan Supplement. The Exit Financing will provide the Reorganized Debtor the funds needed to pay all remaining unpaid Administrative Claims in this Subchapter V Case, as well as all start-up costs needed to fund the Reorganized Debtor's operations until the Reorganized Debtor becomes cash flow positive. The Exit Financing will also be used to fund any shortfalls in Projected Disposable Income should the Debtor's actual disposable income be less than the Projected Disposable Income.

## D.  Continued Operations

The Reorganized Debtor will continue to operate with the primary purpose of conducting their business of manufacturing, marketing and selling personal care and nutraceutical products, including skin care and beauty products.

## E.  Distributions

The Reorganized Debtor will make annual Pro Rata Distributions of its Projected Disposable Income to Holders of Allowed General Unsecured Claims over the Commitment Period. However, the Debtor reserves the right to make a lump sum payment during the Commitment Period and to reach settlements with individual Creditors for a lump sum payment agreed upon between the Creditor and the Reorganized Debtor.

## F.  Continued Existence of Limited Partnership

The Reorganized Debtor shall continue to exist after the Effective Date as a Texas limited partnership, with all the powers of a Texas limited partnership, pursuant to the formation documents in effect before the Effective Date.

## G.  Vesting of Assets

Except as otherwise expressly provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), 1141(b) and (c), and any other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estates of the Debtor, including all claims, rights, and Causes of Action of the Debtor, and any other assets or property acquired by the Debtor or the Reorganized Debtor during the Subchapter V Case or under or in connection with the Plan, shall automatically, without the notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule or any requirement of further action, vote or other approval or authorization of the security holders, equity owners, members, managers, officers or directors of the Debtor, the Reorganized Debtor or the other applicable Entity or by any other person (except for those expressly required pursuant hereto or by the Plan Documents), vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Liens, if any, which survive the occurrence of the Effective Date as described in this Plan. On and after the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of its property, without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

## H. Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtor.

## I. Corporate Governance

The affairs of the Reorganized Debtor will continue to be managed by Elysiann Bishop, as its President and Chief Executive Officer. Active Group Management, LLC will continue to be the 99% General Partner of the Reorganized Debtor, and Active Organics, L.P. shall remain the Reorganized Debtor's sole limited partner, with a 1% limited partnership interest.

## J. Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**K. No Shareholder, Partner, Member, Officer, or Director Vote Required**

Prior to, on, or after the Effective Date, as applicable, all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date, as applicable, pursuant to applicable laws, without any requirement of further vote, consent, approval, authorization, or other action by such stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of the Debtor or notice to, order of, or hearing before the Bankruptcy Court.

**L. Preservation of Causes of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including Avoidance Actions), whether arising before or after the Petition Date, including any actions specifically enumerated as being preserved in the Plan Supplement and any actions against any of the non-debtor parties listed in the Debtor's schedules of assets and liabilities and statement of financial affairs, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Debtor will include in the Plan Supplement a non-exhaustive list of the Causes of Action that will be retained.

Nothing in the Plan shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, account receivable, right of setoff, or other legal or equitable right or defense that the Estate may have or choose to assert on behalf of the Debtor or the Reorganized Debtor or their Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law. No entity may rely on the absence of a specific reference in the Plan to any Cause of Action or account receivable against it as an indication that the Debtor or Reorganized Debtor will not pursue any and all available Causes of Action or accounts receivable against it, and all such rights to prosecute or pursue any and all Causes of Action or accounts receivable against any entity are expressly reserved for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action or accounts receivable upon or after the confirmation or consummation of the Plan.

**M. Other Insurance Policies**

From and after the Effective Date, each of the Debtor's insurance policies in existence as of the Effective Date of the Plan, shall be reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor pursuant to section 365 of the Bankruptcy Code and Article X of the Plan. Nothing in the Plan shall affect, impair or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Debtor under the insurance policies in any manner, and such insurance carriers, the insureds, and Reorganized Debtor shall retain all rights and defenses under such insurance policies, and such insurance policies shall apply to, and be enforceable by and against, the insureds, and the Reorganized Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date.

N.    **Section 1145 Exemption**

In accordance with Bankruptcy Code section 1145, the retention of Equity Interests under the Plan is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## VIII.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.    **Compromise and Settlement of Claims, Equity Interests, and Controversies**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed non-severable from each other and from all other terms of the Plan. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against, and Equity Interests in, the Debtor and the Estate and Causes of Action (including Avoidance Actions) against other Entities.

B.    **Compromise, Settlement and Release of Alter Ego, Veil Piercing and Vicarious Liability Claims Against Actichem**

Without limiting the foregoing, in exchange for the Exit Financing and the funding of the settlement of the Agel/JRJR33 Trustee Claims, this Plan shall constitute a settlement and compromise of any all claims of the Debtor against Actichem, including but not limited to any claim that Actichem is the alter ego of the Debtor, part of a joint enterprise or single business enterprise with the Debtor, or any other similar veil piercing or vicarious liability theories or claims that have been or could be asserted against Actichem in an attempt to hold Actichem liable for debts of or claims against the Debtor, including the claims asserted against Actichem in the Agel Lawsuit (the "Veil Piercing Claims"). **SUCH VEIL PIERCING CLAIMS, WHICH BELONG EXCLUSIVELY TO THE DEBTOR, ARE HEREBY SETTLED, COMPROMISED, AND RELEASED, AND ACTICHEM IS RELEASED FROM ANY SUCH VEIL PIERCING CLAIMS, WHETHER ASSERTED BY THE DEBTOR OR ANY OTHER PARTY.**

## C. Exculpation

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE SUBCHAPTER V CASE, IN WHOLE OR IN PART, THE DEBTOR, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE PLAN, THE RESTRUCTURING TRANSACTIONS, ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE FILING OF THE SUBCHAPTER V CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD OR WILLFUL MISCONDUCT. THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

## D. Debtor Release

AS OF THE EFFECTIVE DATE, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE RESTRUCTURING DOCUMENTS, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, TO THE EXTENT PERMITTED BY LAW, BY THE RELEASING PARTIES FROM ANY AND ALL CLAIMS, , CAUSES OF ACTION, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, REMEDIES, LOSSES, AND LIABILITIES WHATSOEVER, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE

RELEASING PARTIES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE SUBCHAPTER V CASE, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTOR OR THE REORGANIZED DEBTOR, AS APPLICABLE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, CAUSES OF ACTION, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASING PARTY, THE RESTRUCTURING AND EACH OF THE RESTRUCTURING TRANSACTIONS, THE RESTRUCTURING OF ANY CLAIM OR INTEREST BEFORE OR DURING THE SUBCHAPTER V CASE, THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, THE PLAN SUPPLEMENT, AND RELATED AGREEMENTS, INSTRUMENTS, AND OTHER DOCUMENTS (INCLUDING THE RESTRUCTURING DOCUMENTS), AND THE NEGOTIATION, FORMULATION, OR PREPARATION THEREOF, THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN RELATED OR RELATING TO THE FOREGOING.

E.    **Injunction**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN, DISCHARGED PURSUANT TO THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTOR, REORGANIZED DEBTOR, THE RELEASED PARTIES, AND THE EXCULPATED PARTIES:  (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF, OR IN CONNECTION WITH, OR WITH RESPECT TO, ANY SUCH CLAIMS OR EQUITY INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF, OR IN CONNECTION WITH, OR WITH RESPECT TO, ANY SUCH CLAIMS OR EQUITY INTERESTS; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF, OR IN CONNECTION WITH, OR WITH RESPECT TO, ANY SUCH CLAIMS OR EQUITY INTERESTS; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF, OR IN CONNECTION WITH, OR WITH RESPECT TO, ANY SUCH CLAIMS OR EQUITY INTERESTS UNLESS SUCH ENTITY HAS EITHER (1) TIMELY FILED A PROOF OF CLAIM ASSERTING A RIGHT OF SETOFF OR

**RECOUPMENT, OR (2) TIMELY ASSERTED SUCH SETOFF OR RECOUPMENT RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR RECOUPMENT, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR RECOUPMENT PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS TREATED, RELEASED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN.**

## F.     Discharge of Claims

The Debtor shall receive a discharge of all debts, as set forth more fully below, arising before the Effective Date; however, the timing of the discharge will depend on whether this Plan is confirmed as a consensual plan or a cramdown plan pursuant to Bankruptcy Code sections 1191(a) or (b), respectively. *See* 11 U.S.C. § 1181(c).

### (1)     Consensual Plan - Discharge Under Bankruptcy Code section 1141(d)

If this Plan is confirmed pursuant to Bankruptcy Code section 1191(a), the Debtor shall receive a discharge pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Equity Interests or causes of action of any nature whatsoever against the Debtor, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtor or its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and causes of action against the Debtor that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the occurrence of the Effective Date.

### (2)     Cramdown Plan - Discharge Under Bankruptcy Code section 1192

If this Plan is confirmed as a cramdown plan pursuant to Bankruptcy Code section 1191(b), the Debtor shall receive a discharge "as soon as practicable after completion by the [Debtor] of all payments due within the [Commitment Period]." *See* 11 U.S.C. § 1192.  Except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of

Claims, Interests or causes of action of any nature whatsoever against the Debtor, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtor or its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and causes of action against the Debtor that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code section 502; or (3) the Holder of such a Claim or Equity Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the occurrence of the Effective Date.

## G. Release of Liens

Except with respect to an Allowed Secured Claim in accordance with Article IV, or as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtor or the Reorganized Debtor, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor.

## H. Reservation of Rights, Claims and Causes of Action by the Debtor

**EXCEPT AS SPECIFICALLY PROVIDED FOR IN THE PLAN, PLAN SUPPLEMENT, OR IN THE CONFIRMATION ORDER, NOTHING CONTAINED IN THE PLAN OR IN THE CONFIRMATION ORDER SHALL BE DEEMED TO BE A WAIVER OR RELINQUISHMENT OF ANY CLAIM, CAUSE OF ACTION, RIGHT OF SETOFF, OR OTHER LEGAL OR EQUITABLE DEFENSE THAT THE DEBTOR HAS IMMEDIATELY PRIOR TO THE PETITION DATE, AGAINST, OR WITH RESPECT TO, ANY CLAIM LEFT UNIMPAIRED BY THE PLAN. THE DEBTOR OR THE REORGANIZED DEBTOR, AS APPLICABLE, SHALL HAVE, RETAIN, RESERVE, AND BE ENTITLED TO ASSERT ALL SUCH CLAIMS, CAUSES OF ACTION, RIGHTS OF SETOFF, OR OTHER LEGAL OR EQUITABLE DEFENSES WHICH IT HAD IMMEDIATELY PRIOR TO THE PETITION DATE FULLY AS IF THE SUBCHAPTER V CASE HAD NOT BEEN COMMENCED, AND ALL LEGAL AND EQUITABLE RIGHTS OF THE DEBTOR WITH RESPECT TO ANY CLAIM LEFT UNIMPAIRED BY THE PLAN MAY BE ASSERTED AFTER THE CONFIRMATION DATE TO THE SAME EXTENT AS IF THE SUBCHAPTER V CASE HAD NOT BEEN COMMENCED. THE REORGANIZED DEBTOR'S RIGHT TO COMMENCE AND PROSECUTE CAUSES OF ACTION SHALL NOT BE ABRIDGED OR MATERIALLY ALTERED IN ANY MANNER BY REASON OF CONFIRMATION OF THE PLAN. NO DEFENDANT PARTY TO ANY CAUSES OF ACTION BROUGHT BY THE DEBTOR OR REORGANIZED SHALL BE ENTITLED TO ASSERT ANY DEFENSE BASED, IN**

**WHOLE OR IN PART, UPON CONFIRMATION OF THE PLAN, AND CONFIRMATION OF THE PLAN SHALL NOT HAVE ANY RES JUDICATA OR COLLATERAL ESTOPPEL EFFECT UPON THE COMMENCEMENT AND PROSECUTION OF THE CAUSES OF ACTION.**

## IX. CONDITIONS PRECEDENT TO EFFECTIVE DATE

### A. Conditions Precedent to Effective Date

The following is a list of the conditions precedent to the Effective Date of the Plan:

1.     the Confirmation Order shall have been entered by the Bankruptcy Court confirming the Plan in form and substance acceptable to the Debtor, and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

2.     all governmental and material third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall be in full force and effect (which, in the case of an order of judgment of any Court, shall mean a Final Order), and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions;

3.     all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery, and (b) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

4.     The contract with the third-party manufacturer the Debtor intends to use to manufacture its products upon emergence from bankruptcy shall have been signed by the Debtor and the manufacturer.

5.     All documents necessary to implement the Exit Financing shall have been executed by Actichem and the Debtor, and any initial amount required to be funded pursuant to such Exit Financing shall have been paid to the Debtor.

6.     The Bankruptcy Court shall have entered an order approving the proposed settlement of the Agel/JRJR33 Trustee Claims in form and substance acceptable to the Debtor, and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal.

### B. Waiver of Conditions Precedent

The conditions to the Effective Date set forth in this Article IX may be waived only by consent of the Debtor without any notice to other parties in interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate the Plan. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted

by the Debtor as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor, in their sole discretion). The failure of the Debtor, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

## C.    Effect of Nonoccurrence of Conditions

If the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of the Debtor or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person or Entity.

## X.    RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Subchapter V Case for, among other things, the following purposes:

1.    to hear and determine all matters relating to the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance of Cure amounts and Claims resulting therefrom;

2.    to hear and determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

3.    to Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against or Equity Interest in a Debtor, including the resolution of any request for payment of any Claim or Equity Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims and Equity Interests

4.    to ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.    to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

6.    to hear and determine any application to modify the Plan in accordance with Bankruptcy Code section 1193, to remedy any defect or omission or reconcile any inconsistency

in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

7. to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

8. to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court, except as otherwise provided herein;

9. to issue orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan;

10. to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

11. to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

12. to determine any other matters that may arise in connection with or related to the Plan, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to the Plan or the Plan Supplement;

13. to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Subchapter V Case, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Equity Interest is discharged hereunder, or for any other purpose;

14. to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Subchapter V Case (whether or not the Subchapter V Case has been closed);

15. to hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

16. to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtor or the Reorganized Debtor pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

17. to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Subchapter V Case with respect to any Person;

18. to hear any other matter related to the Plan and not inconsistent with the Bankruptcy Code; and

19. to enter a Final Decree closing the Subchapter V Case.

# XI. MISCELLANEOUS PROVISIONS

### A. Amendment or Modification of the Plan

Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date; provided that the Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code section 1193(a) of the Bankruptcy Code. The Debtor may modify the Plan at any time after Confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Bankruptcy Code section 1193(b) and the circumstances warrant such modifications. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

### B. Plan Supplement

Draft forms of certain documents, agreements, instruments, schedules and exhibits specified in the Plan shall, where expressly so provided for in the Plan, be contained in the Plan Supplement Filed from time to time. Unless otherwise expressly provided in the Plan, the Debtor may File any Plan Supplement until fourteen (14) days prior to the Confirmation Hearing and may alter, modify or amend any Plan Supplement in accordance the Plan. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement on the Bankruptcy Court's Website.

### C. Additional Documents

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Reorganized Debtor, as applicable, and all Holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### D. Governing Law

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan, an exhibit or a schedule hereto, a Plan Document or any settlement incorporated herein provide otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

### E. Time

To the extent that any time for the occurrence or happening of an event as set forth in the Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

## F.     Severability

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## G.     Revocation

The Debtor reserve the right to revoke and withdraw the Plan prior to the entry of the Confirmation Order. If the Debtor revokes or withdraws the Plan, the Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, any other Person or Entity, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

## H.     Reservation of Rights

The Plan shall have no force or effect unless and until entry by the Bankruptcy Court of the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

## I.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## J.     Service of Documents

Any pleading, notice, or other document shall be in writing and, unless otherwise provided herein, shall be served on:

| Debtor/Reorganized Debtor: | Elysiann Bishop<br>ActiTech, L.P.<br>9535 Forest Lane, #249<br>Dallas, TX 75243 |
| --- | --- |
| Counsel to Debtor | Douglas J. Buncher<br>Neligan LLP |

| | |
|---|---|
| | 325 N. St. Paul, Suite 3600 Dallas, TX 75201 dbuncher@neliganlaw.com |
| United States Trustee | Office of the United States Trustee 1100 Commerce Street, Room 976 Dallas, Texas 75242 Attention: Nancy Resnick Nancy.S.Resnick@usdoj.gov |
| Subchapter V Trustee | Areya Holder Aurzada Holder Law 901 Main Street Suite 5320 Dallas, TX 75202 areya@holderlawpc.com |

## K.      Merger

Except as otherwise indicated, on the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of the Plan, all of which will have become merged and integrated into the Plan on the Effective Date.

## L.      Inconsistency

To the extent the Confirmation Order and/or the Plan is inconsistent with any other agreement entered into between the Debtor and any third party, the Plan shall control any previous agreements and the Confirmation Order shall control the Plan.

## M.      Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code sections 1125 and 1126, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation. Accordingly, the Debtor, the Reorganized Debtor, and each of their Related Parties shall be entitled to, and upon the Confirmation Date will be granted, the protections of Bankruptcy Code section 1125(e).

## N.      Default

No default in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of the Confirmation Order. Unless otherwise specified in the Plan, if any party in interest believes that the Debtor/Reorganized Debtor are in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtor/Reorganized Debtor and Counsel to the Debtor prior to filing a motion with the Bankruptcy Court regarding the alleged noncompliance or otherwise seeking Bankruptcy Court enforcement of the terms of this Plan.

**O.**     **Post-Confirmation Distribution Reports**

The Reorganized Debtor will file post-confirmation distribution reports within 45 days of making any Distribution under the Plan and shall comply with Local Rule 3022-1 when seeking a Final Decree.

August 31, 2022                 */s/ Elysiann Bishop*
Dallas, Texas                   Elysiann Bishop
                              Chief Executive Officer
                              ActiTech, L.P.

91432v.2